## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS,
## SHERMAN DIVISION

| | | |
|---|---|---|
| **INTRINSIC HOSPITALITY, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | Civil Action No. _____ |
| | § | |
| **JAY KAROTKIN, SEAN OSBORNE,** | § | |
| **AND JAGMOHAN DHILLON,** | § | |
| | § | |
| **Defendant.** | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Intrinsic Hospitality, LLC ("**Intrinsic**") brings this action against Defendants Jay Karotkin, Sean Osborne, and Jagmohan Dhillon (collectively "**Defendants**") for equitable and legal relief under federal and state law arising from Defendants' unlawful conduct, unauthorized access, i.e. "hacking," into Intrinsic's computer system, and theft of Intrinsic's valuable trade secrets and other confidential and proprietary information. Defendants utilized Intrinsic's trade secrets and other confidential and proprietary information to lure customers and employees away from Intrinsic, which resulted in millions of dollars of damage to Intrinsic.

### I.     PARTIES

1.      Intrinsic is a limited liability company formed under the laws of the State of Texas that is headquartered in Carrollton, Texas and has substantial business operations in Dallas, Texas.

2.      Jay Karotkin ("**Karotkin**") is an individual, a former employee of Intrinsic, and one of the individuals who conducted the unlawful activities alleged in this Complaint. Karotkin may be served at 9910 Madrone Drive, Frisco, Texas 75033.

---

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                    **Page 1**

3.      Sean Osborne ("**Osborne**") is an individual, a former employee of Intrinsic, and one of the individuals who conducted the unlawful activities alleged in this Complaint. Osborne may be served at 680 W. Sam Houston Parkway S., Apartment 2413, Houston, TX 77042.

4.      Jagmohan Dhillon ("**Dhillon**") is an individual, a customer of Intrinsic, and one of the individuals who conducted the activities alleged in this Complaint. Dhillon may be served at 8000 Warren Parkway, Suite 206, Frisco, TX 75034.

## II.      JURISDICTION AND VENUE

### A.      SUBJECT MATTER JURISDICTION

5.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because certain claims arise under the laws of the United States.

6.      Pursuant to 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over the remaining claims arising under Texas law, because the state law claims are so related to the federal claims that they form part of the same case and controversy under Article III of the United States Constitution and derive from a common nucleus of operative fact.

### B.      VENUE

7.      Venue is proper in the Eastern District of Texas, Sherman Division, pursuant to 28 U.S.C. § 1391(b)(1), because all defendants are residents of the State of Texas and at least one defendant resides in the Eastern District of Texas, Sherman Division.

### C.      PERSONAL JURISDICTION

8.      The Court has personal jurisdiction over Defendants because the unlawful acts alleged in this Complaint occurred in this judicial district.

### III.   FACTUAL BACKGROUND

**A.**   **INTRINSIC'S BUSINESS ACTIVITIES, TRADE SECRETS, AND OTHER CONFIDENTIAL AND PROPRIETARY INFORMATION**

9.      Intrinsic is engaged in the business of procurement, logistics, and project management for the hospitality industry, including, but not limited to, providing project management, design, installation logistics, and furniture, fixtures, and equipment purchasing to its hotel and hospital clientele. Intrinsic derives a substantial competitive advantage in the hospitality industry from its contractual and business relationships with: customers that place significant procurement orders on a regular basis; independent agents who broker Intrinsic's services; suppliers who provide the actual goods; and employees who work for Intrinsic.

10.      To provide quality service to its customers, Intrinsic invested and continues to invest a substantial amount of time and money in developing and compiling its confidential and proprietary information, systems, and knowledge.

11.      Intrinsic' s trade secrets and confidential information, systems, and knowledge includes, but is not limited to:

     (a)    The identity of Intrinsic' s most profitable customers, accounts, services, and products;

     (b)    Compilations of account records and contact information of individuals associated with certain customers and suppliers;

     (c)    Purchasing patterns of Intrinsic's customers;

     (d)    Information related to special needs of Intrinsic's customers;

     (e)    Information related to the particular and specialized services offered by Intrinsic;

     (f)    Information related to the targeted or anticipated products or services needed by Intrinsic's customers;

     (g)    Policies and business practices of Intrinsic's customers, agents, and suppliers;

(h)     Intrinsic's strategies and approaches to procurement, logistics, and project management;

(i)     Management of multiple location customer accounts developed and implemented by Intrinsic;

(j)     Intrinsic's overhead costs with respect to products and services provided to its customers;

(k)     Prices at which Intrinsic sells products or services to its customers; and

(l)     Profit margins and overhead costs associated with Intrinsic's relationships with its agents and suppliers.

Intrinsic's trade secrets and other confidential and proprietary information are not generally known in the hospitality industry.

12.     Defendants are now utilizing Intrinsic's internal business and operations records, as well as Intrinsic's trade secrets and other confidential and proprietary information, obtained by virtue of their employment with Intrinsic and/or unauthorized access of Intrinsic's computer system, electronic files, and emails, to directly compete with Intrinsic in the hospitality industry.

## B.   DEFENDANTS' BAD ACTS

13.     In February of 2015, Karotkin was hired by Intrinsic as Director of Project Development and was later promoted to Director of Sales. In conjunction with his employment, Karotkin executed an Employment Contract on February 19, 2015. The effective date of the Employment Contract was February 18, 2015. The Employment Contract included a Confidentiality provision, Non-Compete Agreement, Damages provision, and a provision governing the Unauthorized Disclosure of Information.

14.     Additionally, on February 18, 2015, Karotkin executed an Employee Confidentiality Agreement ("Confidentiality Agreement"). Under the Confidentiality Agreement, Karotkin agreed, in pertinent part, to:

(a)     Hold the Confidential Information received from Intrinsic in strict confidence and shall exercise a degree of care to prevent disclosure to others.

(b)   Not disclose or divulge either directly or indirectly the Confidential Information to others unless first authorized to do so in writing by Intrinsic.

(c)   Not reproduce the Confidential Information nor use this information commercially or for any other purpose other than the performance of his/her duties for Intrinsic.

15.   During the fall of 2016, unbeknownst to Intrinsic, Karotkin began to explore alternative employment opportunities with Dhillon, Larry Williams ("**Williams**"), and JB Abbas ("**Abbas**"), of Orchid Global Hotels, Galaxy Management Company ("**Orchid Global**").

16.   Osborne began working for Intrinsic on January 30, 2017 as a Project Coordinator. As a Project Coordinator, Osborne served as a main point of contact for clients, vendors, and contractors on projects. He also possessed extensive knowledge of Intrinsic's computer network and security features, trade secrets, and other confidential and proprietary information that resided in Intrinsic's network. Osborne resigned from Intrinsic on May 22, 2017.

17.   Karotkin's exploration of the employment opportunity with Orchid Global resumed in June of 2017, with the exchange of additional health insurance plan information between Karotkin, Abbas, and Dhillon. On June 4, 2017, Karotkin emailed Dhillon two PDF documents, a purchase order and proposal, seemingly prepared by SCN Renovation and Design for a project (Karotkin's "**First Email**").

18.   At first glance, the documents attached to Karotkin's First Email do not appear to show proposals from Intrinsic, as they contain the header "SCN Renovation & Design." However, the file content was taken from an Intrinsic file last saved by Karotkin. Specifically, the files contained the same title, fee classifications, and both list the allocation for an "Intrinsic Hospitality Purchasing Fee." Additionally, the tabs are identical in name and content.

19.   Also on June 4, 2017, Karotkin emailed Dhillon two additional PDFs, a purchase order and proposal for a second project, asking in the message, "[w]ill this work?" (Karotkin's

"**Second Email**"). Again, these documents included the "SCN Renovation & Design" header, content that was taken from an Intrinsic file last saved by Karotkin and are nearly identical to Intrinsic documentation for the same project except for the header and reduced estimate.

20.     On June 7, 2017, after Osborne had resigned from Intrinsic, Karotkin forwarded his First Email, his Second Email, and the corresponding attachments, to Osborne's personal e-mail address. Later that day, Karotkin sent another e-mail to Osborne's personal email address, again attaching the proposal included in his First Email that contained a total estimate identical to Intrinsic's estimate for the same project.

21.     On June 9, 2017, Karotkin emailed Williams the latest version of his First Email proposal with a reduced estimate and later forwarded same to Osborne's personal email address. Also, on June 9, 2017, Karotkin received a text message from Williams regarding access to a specification manual, which stated "I just save those specification manual to a Google Drive just need to explain how to get in it's connected with your DiRico email."

22.     Karotkin resigned from Intrinsic on June 22, 2017. At that time, he was the Director of Sales for Intrinsic. As the Director of Sales, Karotkin possessed extensive client and vendor knowledge as well as knowledge of Intrinsic's computer network and security features, trade secrets, and other confidential and proprietary information that resided in Intrinsic's network.

23.     In the weeks leading up to Karotkin's resignation and departure, Karotkin utilized USB devices to access and transfer data to/from his Intrinsic computer. On June 30, 2017, Karotkin's final day at Intrinsic, Karotkin copied eighty-five (85) Intrinsic files into his Dropbox account. No requests were made by Intrinsic to continue to assist with the project to which the files were related, and there is no reasonable basis for Karotkin to have removed this Intrinsic data from the company's custody and control.

24.     Upon information and belief, Karotkin and Osborne, while working for Intrinsic and thereafter, accessed Intrinsic's electronic files, computer system, and emails to obtain and utilize Intrinsic's confidential and proprietary information for the benefit of Dhillon and other unidentified third-parties.

25.     While employed by Intrinsic, Karotkin and Osborne were entrusted with complete knowledge and management of Intrinsic's sales information, data configuration, and passwords.

26.     Computer forensic analysis has shown that Intrinsic's files were e-mailed, downloaded, and placed in file sharing accounts without the authorization of Intrinsic.

27.     Intrinsic did not authorize or consent to Defendants' conduct and has been harmed by it.

28.     Upon information and belief, Defendants used the information obtained by virtue of their former employment with Intrinsic and their unlawful access into Intrinsic's computer network and files to convince Intrinsic's clients to terminate their relationships and contracts with Intrinsic, to reduce their business with Intrinsic, and to enter into new business arrangements with Karotkin, Osborne, and other unidentified third-parties.

29.     Upon information and belief, Defendants used the information they obtained to undercut Intrinsic' s bids on certain upcoming projects.

30.     Upon information and belief, Defendants also used Intrinsic's trade secrets and other confidential and proprietary information to convince Intrinsic's employees to terminate their employment with Intrinsic.

31.     Defendants' unauthorized access to Intrinsic's computer systems caused Intrinsic to retain computer experts to respond to Defendants' unlawful conduct and perform a damage assessment as well as retain counsel to litigate this case.

## IV.   CAUSES OF ACTION

### A.   VIOLATIONS OF COMPUTER FRAUD AND ABUSE ACT

32.    Intrinsic hereby incorporates, as if copied and set forth at length, all of the factual allegations made previously herein.

33.    Defendants intentionally accessed Intrinsic's protected computer without authorization.

34.    Intrinsic's computer is a protected computer as defined in 18 USC § 1030(e)(2)(B) because it is used in interstate commerce or communication.

35.    Defendants' intentional unauthorized access of Intrinsic's computer caused Intrinsic a loss of more than $5,000 in the last calendar year in responding to Defendants' conduct and performing a damage assessment.

36.    Defendants' conduct also caused Intrinsic a loss of more than $5,000 in the last calendar year in lost revenue, costs incurred, and other consequential damages.

### B.   CONVERSION

37.    Intrinsic hereby incorporates, as if copied and set forth at length, all of the factual allegations made previously herein.

38.    Intrinsic has a possessory right to its trade secrets and other confidential and proprietary information.

39.    Defendants unlawfully appropriated, secured, and stole Intrinsic's trade secrets and other confidential and proprietary information.

40.    Defendants' taking of Intrinsic's trade secrets and other confidential and proprietary information was done with the intent to deprive Intrinsic of its trade secrets and other confidential and proprietary information.

41.     Defendants' wrongful acts proximately caused injury to Intrinsic, which resulted in lost revenue, costs incurred, and other consequential damages, which Intrinsic seeks to recover from Defendants.

42.     Intrinsic's injury resulted from Defendants' malice, which entitled Intrinsic to exemplary damages under Section 41.003(a) of the Texas Civil Practice and Remedies Code.

## C.     MISAPPROPRIATION OF TRADE SECRETS AND OTHER CONFIDENTIAL AND PROPRIETARY INFORMATION

43.     Intrinsic hereby incorporates, as if copied and set forth at length, all of the factual allegations made previously herein.

44.     Intrinsic owns all rights, title, and interest to its trade secrets and other confidential and proprietary information.

45.     Defendants obtained Intrinsic's trade secrets and other confidential and proprietary information by improper means when Defendants unlawfully accessed Intrinsic's computer system, digital information, and files.

46.     Defendants used Intrinsic's trade secrets and other confidential and proprietary information without Intrinsic's authorization to Defendants' commercial advantage.

47.     Intrinsic has suffered and continues to suffer damages.

48.     Defendants' conduct entitles Intrinsic to actual and exemplary damages under Section 134A.004(b) of the Texas Civil Practice and Remedies Code, pre- and post-judgment interest, and court costs.

49.     Intrinsic is entitled to reasonable attorneys' fees under Section 134A.005 of the Texas Civil Practice and Remedies Code because Defendants willfully and maliciously misappropriated Intrinsic's trade secrets and other confidential and proprietary information as set forth herein.

**D.**     **VIOLATION OF DEFEND TRADE SECRETS ACT OF 2016**

50.     Intrinsic hereby incorporates, as if copied and set forth at length, all of the factual allegations made previously herein.

51.     By virtue of their employment with Intrinsic and/or from hacking into Intrinsic's computer network, Karotkin and Osborne had access to Intrinsic's valuable trade secrets, client information, pricing information, internal financial information and projections, statements, as well as confidential business strategies, practices, and methods, and other confidential and proprietary information, systems, and knowledge in Intrinsic's possession, custody, and control that Karotkin and Osborne, upon information and belief, conspired to use, and ultimately did use, in a competing business with Williams, Abbas, and Dhillon of Orchid Global in violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 et seq.

52.     Karotkin and Osborne's actions in misappropriating Intrinsic's valuable trade secrets, client information, pricing information, internal financial information and projections, statements, as well as confidential business strategies, practices, and methods, and other confidential and proprietary information, systems, and knowledge constitute a violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 et seq.

53.     Pursuant to the Defend Trade Secrets Act of 2016, Intrinsic is entitled to actual damages and exemplary damages stemming from Karotkin, Osborne, and Dhillon's willful and malicious misappropriation of Intrinsic's valuable trade secrets, client information, pricing information, internal financial information and projections, statements, as well as confidential business strategies, practices, and methods, and other confidential and proprietary information, systems, and knowledge.

54.     In addition to the actual and/or exemplary damages contemplated in the Defend Trade Secrets Act of 2016, Intrinsic is entitled reasonable attorneys' fees for Defendants' violation

of the Defend Trade Secrets Act of 2016 as well as monetary damages for the unjust enrichment of Defendants in their use of Intrinsic's confidential and propriety information and trade secrets.

## E.   TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS

55.   Intrinsic hereby incorporates, as if copied and set forth at length, all of the factual allegations made previously herein.

56.   Prior to the unlawful and improper conduct of Defendants, Intrinsic had several valuable and valid contracts with certain customers and suppliers.

57.   Defendants were aware of these contracts, and willfully interfered, resulting in the clients' and suppliers' termination of Intrinsic's services.

58.   Intrinsic incurred actual damage and loss from Defendants' unlawful conduct of intentionally and willfully interfering with these contracts.

59.   Defendants' conduct entitles Intrinsic to actual and exemplary damages, pre- and post-judgment interest, and court costs.

## F.   TORTIOUS INTERFERENCE WITH PROSPECTIVE RELATIONS

60.   Intrinsic hereby incorporates, as if copied and set forth at length, all of the factual allegations made previously herein.

61.   Prior to the unlawful and improper conduct of Defendants, there was a reasonable belief and expectation that Intrinsic would have entered into business relationships with certain prospective customers.

62.   Defendants were aware of those potential contracts and intentionally interfered with those relationships by improperly using Intrinsic's trade secrets and other confidential and proprietary information to solicit Intrinsic's customers, undercut Intrinsic's bids, and effectively divert business to themselves and their new employer.

63.   Intrinsic suffered actual damage or loss from Defendants' conduct.

64.     Defendants' interference with the prospective contracts with certain customers was the proximate cause of Intrinsic's injury.

65.     Defendants' conduct is independently tortious or unlawful because it violates federal and state law.

66.     Defendants' conduct entitles Intrinsic to actual and exemplary damages, pre- and post-judgment interest, and court costs.

**G.     BREACH OF CONTRACT BY KAROTKIN**

67.     Intrinsic hereby incorporates, as if copied and set forth at length, all of the factual allegations made previously herein.

68.     Intrinsic and Karotkin had a valid and enforceable Employment Contract which Karotkin executed on February 19, 2015.

69.     Intrinsic and Karotkin each obligated themselves to the terms of the contract as evidenced by their signatures.

70.     Intrinsic performed its contractual duties under the Employment Contract.

71.     Karotkin breached the Employment Contract by accessing and disclosing Intrinsic's trade secrets and other confidential and proprietary information in contravention of the terms of the Employment Contract.

72.     Karotkin's breach caused Intrinsic to suffer injuries in the form of actual damage or loss.

73.     Karotkin's conduct entitles Intrinsic to actual damages, pre- and post-judgment interest, court costs, and attorney's fees pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code.

H.    BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY

74.    Karotkin and Osborne owed Intrinsic certain fiduciary duties as employees. In their roles at Intrinsic, Karotkin and Osborne held positions of confidence and trust. They were required to act solely for the benefit of Intrinsic in all matters connected with their employment and were required to be completely candid with Intrinsic about all matters related to its business.

75.    By undercutting Intrinsic's bids, sending confidential and proprietary information off-site, sharing information with former employees, diverting business, stealing purchase and proposal information, stealing project information, and soliciting Intrinsic's customers, Karotkin and Osborne breached certain duties owed to Intrinsic.

76.    It is unlawful for employees to misappropriate trade secrets of their employer, solicit customers while still employed, and/or take information from their employer.

77.    Likewise, it is unlawful for an employee to use confidential information or trade secrets he acquired during his employment in a manner adverse to his employer. This obligation survives the termination of employment.

78.    Karotkin and Osborne breached their fiduciary duties and duty of loyalty owed to Intrinsic. Intrinsic seeks the disgorgement, revenue, and profits they received as a result of breaches of their fiduciary duties while working for an unidentified third party, as well as any benefit that they continue to receive while in violation of their fiduciary duties.

## V.    CONDITIONS PRECEDENT

79.    All conditions precedent to Intrinsic's claim for relief have been performed or have occurred.

## VI.    PRAYER FOR RELIEF

80.    Intrinsic Hospitality, LLC prays that this Court:

(a)    Enter a judgment against Defendants on each count of the Complaint as alleged;

(b)     Award Intrinsic actual, consequential, exemplary, and punitive damages;

(c)     Award Intrinsic its attorneys' fees necessary for prosecuting this action;

(d)     Award Intrinsic its pre and post judgment interest at the highest rate allowable by law;

(e)     Award Intrinsic its costs of court; and

(f)     Grant Intrinsic all such further and additional relief to which it may be entitled.

DATED:     June 1, 2018.

Respectfully Submitted,

*/s/ Mike F. Pipkin*
MIKE F. PIPKIN
Texas State Bar No. 16027020
ROBERT K. RADCLIFF
Texas State Bar No. 24011170
SCOTT MCFADIN
Texas State Bar No. 24098074

**WEINSTEIN RADCLIFF PIPKIN LLP**
8350 N. Central Expressway, Suite 1550
Dallas, Texas 75206
Telephone:     469.629.5300
Facsimile:     214.865.6140
Email:          mpipkin@weinrad.com
                rradcliff@weinrad.com
                smcfadin@weinrad.com

**ATTORNEY FOR PLAINTIFF**
**INTRINSIC HOSPITALITY, LLC**

---